FILED IN CHAMBERS
U.S.D.C. Rome

AUG 1 4 2007

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILBUR FULLER, individually
and on behalf of all others
similarly situated,

        Plaintiff,

      v.

HOME DEPOT SERVICES, LLC, HOME
DEPOT U.S.A., INC., THE HOME
DEPOT, INC., and JOHN DOES 1 &
2,

        Defendants.

CIVIL ACTION

NO. 1:07-CV-1268-RLV

O R D E R

This is an action arising under Georgia state law against Home

Depot Services, LLC, Home Depot U.S.A., Inc., and The Home Depot

Inc. (hereinafter "Home Depot")[1]  This case was originally filed in

the Superior Court of Fulton county, Georgia but was subsequently

removed to this court pursuant to the Class Action Fairness Act

["CAFA"], 28 U.S.C. § 1332(d).  The plaintiff alleges, among other

things, fraud and negligent misrepresentation against Home Depot

based on its tool rental services offered at many of the home

improvement retailer's stores.  Pending before the court are the

plaintiff's Motion to Remand [Doc. No. 4], Home Depot's Motion to

---

[1]Because the Federal Rules of Civil Procedure do not provide
for fictitious party pleading, the two John Doe defendants named in
the complaint are hereby DISMISSED.

Dismiss [Doc. No. 3], and Home Depot's Motion to Dismiss the Amended Complaint [Doc. No. 13].  For the foregoing reasons, the Motion to Remand is DENIED, the Motion to Dismiss is GRANTED, and the Motion to Dismiss the Amended Complaint is DISMISSED as MOOT.

The claims in this case have already been before the court. In <u>Fuller v. Home Depot</u>, NO. 1:06-CV-1490-RLV, 2007 WL 328815, the plaintiffs alleged claims nearly identical to those in this case, except that the previous action included federal as well as state law claims.  That case was terminated when this court dismissed the federal claims, declined to exercise supplemental jurisdiction over the remaining state law claims, and dismissed those claims without prejudice.  Consequently, the state  claims remained alive, but they apparently were never adjudicated in another forum.  The matter is again in federal court after the plaintiff brought a new action in state court raising only state law claims, whereupon Home Depot filed a notice of removal pursuant to the Class Action Fairness Act ["CAFA"], 28 U.S.C. § 1332(d), which brought the issues back to where they originally began.

<u>FACTUAL BACKGROUND AND ALLEGATIONS</u>

On nine separate occasions, between April 1, 2005, and July 23, 2005, the plaintiff rented home improvement tools from one of four  Atlanta area Home Depot stores.  On every occasion, the

alleged sequence of events is substantively identical.  When the plaintiff rented a tool, the invoice automatically listed the price of the rental as well as an additional fee, calculated at ten percent of the rental price, for "damage protection."  On each occasion, when the plaintiff inquired about the "damage protection" plan, he was told by a Home Depot employee that without it, he would be fully liable for any damage that occurred to the tool.  To complete the transaction, the plaintiff had to initial a block on the rental form indicating his consent to two separate questions: that he had been offered, but declined, the operating manuals for rented tools, and that he accepted the "damage protection" benefits offered by Home Depot.  However, according to the plaintiff, he was never offered an operating manual for any of the equipment he rented, and the employee's statement about the "damage protection" plan offer deceived him into believing that it covered damage for which he would otherwise be held liable.

On three of the nine occasions, the plaintiff did not initial the box indicating an election of the additional "damage protection," but he was nevertheless charged the additional ten percent. The alleged harm caused by Home Depot's scheme is the total of each ten percent "damage protection" fee charged to the plaintiff because he either did not consent to the  protection or

it was unnecessarily redundant due to other warranties provided for elsewhere in the agreement.

The plaintiff further alleges that Home Depot's "damage protection" plan and its employees' statement regarding the plan are deceptive because although it is listed as an optional feature, the standard practice is to automatically charge the additional ten percent regardless of whether a customer chooses to have the additional protection. Also, the additional protection apparently covers only the repair or replacement cost of equipment damaged during normal use, not the cost for damage or loss resulting from theft, misuse, or neglect. The plaintiff alleges that Home Depot's scheme deceives customers by not disclosing that the damage covered by the "damage protection" plan is already covered by each tool manufacturer's warranty and Home Depot's warranty. According to the plaintiff, when a customer rents a tool, he is advised by a Home Depot representative that without the protection plan he will be fully liable for all damage. However, the plaintiff alleges that regardless of whether a customer chooses the optional "damage protection" plan, the manufacturers' warranty and Home Depot's warranty will cover the same damage covered by the plan. Thus, Home Depot allegedly deceives customers into selecting an additional protection scheme that is unnecessarily redundant.

4

According to the plaintiff, Home Depot's scheme defrauds tool rental customers into purchasing unnecessary protection that amounts to an additional ten percent of the rental fee.  In other words, through its scheme, Home Depot offers its tools for rent at one price but then through its misleading rental agreement and invoice practice, automatically charges customers an additional ten percent while offering no additional service or protection that is not already offered by either the tool manufacturer or Home Depot itself.  The plaintiff contends that Home Depot's scheme is illegal under state law claims of fraud, negligent misrepresentation, money had and received, and unjust enrichment.

MOTION TO REMAND

The plaintiff moves this court to remand, asserting that while this is a class action suit, Home Depot has not established jurisdiction pursuant to CAFA.  Under CAFA the federal courts have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity, i.e., at least one plaintiff and one defendant are citizens of different states.  28 U.S.C. § 1332(d)(2).  However, CAFA has a "local controversy" exception,  28 U.S.C. § 1332(d)(4), that requires a court to remand cases that are local in nature.  In moving to remand, the plaintiff does not dispute the amount in

controversy element.  Rather, the plaintiff contends only that Home Depot has failed to show minimal diversity of citizenship element or, alternatively, if Home Depot has properly removed the case, then the "local controversy" exception to CAFA applies and the case should be remanded.

Minimal diversity of citizenship is met when "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  The burden of proving diversity is on the removing party.  Evans v. Walter Industries, Inc., 449 F.3d 1159, 1164 (11th Cir. 2006).  Accordingly, the court must determine whether Home Depot has established that any putative class member is a citizen of a state different than Home Depot.

As the plaintiff admits, Home Depot is incorporated in Delaware and has its principal place of business in Georgia, and is therefore a citizen of both states.  The plaintiff's argument is that there is no diversity because all of the class members and Home Depot are citizens of Georgia.  However, that does not complete the citizenship analysis.  Home Depot is also a citizen of Delaware because that is its state of incorporation.  28 U.S.C. § 1332(c)(1).  Consequently,  even assuming that the plaintiff and all potential class members are citizens of only Georgia, the minimal diversity requirement is met here because Home Depot is a

citizen of a different state--Delaware.  In other words, although Home Depot is a Citizen of Geogia, it is also a citizen of Delaware and, therefore, is diverse from at least one member of the class. Thus, minimal diversity has been established.

There is also evidence that one or more members of the plaintiff's class is not a Georgia citizen, which would in itself create minimal diversity according to § 1332(d)(2).  Home Depot has proffered evidence of at least nine customers who rented tools and listed an out-of-state address and driver's license on their rental agreements.  [Decl. of Gary Lewis, Ex. 1, Doc. No. 1-4.]  The plaintiff argues that this evidence of "residence" is insufficient to show "citizenship" and thus establish that there are proposed class members diverse from Home Depot, but he does not dispute that those nine customers reside outside of Georgia.  However, absent any contradictory evidence, their place of residence is their "domicile."  See McCormick v. Aderhot, 293 F.3d 1254, 1257-58 (11th Cir. 2002).  For purposes of diversity, a party's "domicile" is the equivalent of his "citizenship."  Id. at 1257.  Therefore, the court concludes that Home Depot's evidence of putative class members' out-of-state driver's licenses and billing addresses is sufficient evidence to show that there are class members domiciled

outside Georgia and, consequently, have citizenship diverse from Home Depot.[2]

Having concluded that Home Depot has properly removed this action, the court must now address the plaintiff's contentions that the "local controversy" exception to CAFA applies. Notably, some courts have referred to two separate exceptions: a "local controversy" exception, found at section 1332(d)(4)(A), and a "home state" exception, found at section 1332(d)(4)(B). See, e.g., Hart v. FedEx Ground Package System, Inc., 457 F.3d 675 (7th Cir. 2006). That is, the exception to the jurisdictional rule under CAFA found in section 1332(d)(4) has been analyzed in terms of two separate exceptions pursuant to the two subsections in that one section. The plaintiff has similarly structured his argument referring to

---

[2]The plaintiff has filed an amended complaint [Doc. No. 6] that attempts to modify the definition of the proposed class. According to the amended complaint, and the plaintiff's statement in his Motion to Remand [Doc. No. 4-2, n.1], the putative class should consist only of "Georgia citizens and consumers who leased tools or equipment from Home Depot during the past ten (10) years and were damaged thereby" [Doc. No. 6, ¶ 47]. In so doing, the plaintiff attempts to omit from his proposed class Home Depot customers with out-of-state citizenship who rented tools during the relevant time period. However, while the court doubts the new language would have the desired effect, it need not decide that matter because it nevertheless remains true that Home Depot is a citizen of Delaware. Consequently, even if the proposed class were comprised solely of Georgia citizens, the requirements for minimal diversity would still be met.

two separate "exceptions."  However, in <u>Evans</u>, the Eleventh Cir-

cuit referred to a single "local controversy" exception to CAFA,

which "can be satisfied in either of two ways, as provided for

respectively in 28 U.S.C. § 1332(d)(4)(A) or (B)."  <u>Evans</u>, 449 F.3d

at 1163 n.2.  Accordingly, even though the plaintiff refers to two

separate "exceptions," this court will address his arguments in

terms of the two subsections prescribing the two methods for

satisfying the single "local controversy" exception provided for in

the statute.

Once the removing party has established jurisdiction, as Home

Depot has done here, the burden for proving that the "local

controversy" exception is applicable shifts to the plaintiff.

<u>Evans</u>, 449 F.3d at 1165.  Under CAFA, the "local controversy"

exception mandates that a district court shall decline jurisdiction

> (A)(i) over a class action in which--
> (I) greater than two-thirds of the members of all
> proposed plaintiff classes in the aggregate are citizens
> of the State in which the action was originally filed;
> (II) at least 1 defendant is a defendant--
> (aa) from whom significant relief is sought by members of
> the plaintiff class;
> (bb) whose alleged conduct forms a significant basis for
> the claims asserted by the proposed plaintiff class; and
> (cc) who is a citizen of the State in which the action
> was originally filed; and
> (III) principal injuries resulting from the alleged
> conduct or any related conduct of each defendant were
> incurred in the State in which the action was originally
> filed; and

(ii) during the 3-year period preceding the filing of
that class action, no other class action has been filed
asserting the same or similar factual allegations against
any of the defendants on behalf of the same or other
persons; or
(B) two-thirds or more of the members of all proposed
plaintiff classes in the aggregate, and the primary
defendants, are citizens of the State in which the action
was originally filed.

While both methods provided for in subsections (A) and (B)

specify different criteria to satisfy the "local controversy"

exception, to invoke the exception the plaintiff must first prove

that over two-thirds of the class members are citizens of the state

in which the action was filed.    In other words, the mandatory

"local controversy" exception to CAFA is applicable only if over

two-thirds of the class members satisfy the criteria set forth in

either subsection (A) or (B).

In this case, however, the plaintiff has proffered no evidence

whatsoever that shows the citizenship of any member of the putative

class, let alone the citizenship of two-thirds of the members.

Instead, the plaintiff argues that Home Depot's evidence of the

out-of-state citizenship of only nine members out of an

approximately 1.5 million-member class can reasonably support only

a finding that "well over two-thirds of the class members will be

Georgia citizens."   [Pl.'s Mot. to Remand, 7, Doc. No. 4-2.]

However, this argument entirely misses the fact that the party

seeking to invoke an exception to CAFA has an affirmative duty to prove the elements of that exception. To show that either subsection of the "local controversy" exception applies, it is the plaintiff who must carry his burden of proof as to the elements of those subsections.

Rather than pointing to evidence showing that the class meets the first element of both subsections, i.e., that at least two-thirds of the class are Georgia citizens, however, the plaintiff has instead asserted that Home Depot's evidence of the citizenship of only nine class members does not prove that less than two-thirds of the 1.5 million-member class are Georgia citizens. Therefore, according to the plaintiff, because there is nothing showing that less than two-thirds are Georgia citizens, it must be true that more than two-thirds are Georgia citizens. Stated differently, the plaintiff's argument is that because Home Depot's evidence does not disprove his assertion, then his assertion must be true. Such logic, however, would turn the burden of proof for invoking the exception to CAFA on its head.

As noted earlier, when seeking to apply the "local controversy" exception, the plaintiff, not the defendant, has the burden to prove that two-thirds of the putative class members are Georgia citizens. While it may seem an onerous task for the

11

plaintiff to prove the citizenship of at least two-thirds of the approximately 1.5 million-member class, it is nevertheless the plaintiff's burden to bear.   <u>Evans</u>, 449 F.3d at 1166 ("We understand that evidence of class citizenship might be difficult to produce in this case.   That difficulty, however, is to a considerable degree a function of the composition of the class designed by the plaintiffs.").   Because the plaintiff has proffered no evidence whatsoever in support of his assertion that over two-thirds of the class members are Georgia citizens, the burden of proof with respect to the first element in both subsections of the "local controversy" exception has not been met.   Having thus concluded that the plaintiff has failed to meet his burden with respect to the two-thirds requirement, the court finds that the "local controversy" exception to CAFA is not applicable and Home Depot has properly removed this case.[3]

---

[3]Lastly, the plaintiff argues that this court should use its discretion not to exercise jurisdiction pursuant to section 1332 (d)(3).   That exception to CAFA is discretionary in cases where, among other things, less than two-thirds of the class, but greater than one-third, are citizens of the same state as the primary defendant.   However, because the plaintiff has proffered no evidence with respect to the citizenship of any class member, even this discretionary exception is not applicable.

MOTION TO DISMISS

When a court considers a Rule 12(b)(6) motion, the allegations in the complaint must be accepted as true and construed in a light most favorable to the plaintiff.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  To survive a motion to dismiss, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, ___ U.S. ____, ____, 127 S.Ct. 1955, 1964 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Specific factual allegations are not required to adequately state the grounds for a claim.  Instead, a complaint need contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.

The plaintiff's first two claims allege fraud and negligent misrepresentation.  Under Georgia law, a plaintiff alleging fraud must satisfy five elements: "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." Next Century Commc'ns Corp. Ellis, 318 F.3d 1023, 1027 (2003)(internal quotations omitted).  To satisfy a claim for negligent misrepresentation, a plaintiff must prove that (1) the defendant negligently supplied false information to

13

foreseeable persons, known or unknown; (2) such persons reasonably relied on the false information; and (3) economic injury proximately resulted from that reliance. <u>J.E. Black Const. Co. v. Ferguson Enters., Inc.</u>, 284 Ga. App. 345, 348 (2007).

The essence of the plaintiff's allegations is that he was fraudulently induced into entering into a tool rental agreement because Home Depot falsely represented or concealed the applicability of manufacturer warranties and additional warranties offered by Home Depot. Additionally, Home Depot allegedly misrepresented, through its employees, that without consenting to the "damage protection" plan, a customer is fully liable for all damage that may occur to a rented tool. According to the complaint, such a statement is untrue because, (a) at no time was a customer fully liable for damage since other provisions of the rental agreement already relieved a customer of liability for damage that occurred as a result of normal use, and (b) the "damage protection" plan did not provide coverage for anything other than normal use.

The plaintiff's fraud and negligent misrepresentation claims sounding in tort, though, suffer a fatal flaw. Under Georgia law, "a party alleging fraudulent inducement to enter a contract has two

14

options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." Harkins v. Channel, 274 Ga. App. 478, 480 (2005)(citations omitted); see also G. Mansour, Inc. V. Mansour's, Inc., 233 Ga. App. 7, 9 (1998)("Where the party elects the second option and affirms the contract, however, he or she is bound by its terms.")(citations omitted).

Here, the plaintiff has clearly chosen to affirm his contracts with Home Depot that serve as the basis for his claims.  The plaintiff has offered no evidence tending to show that he took any action to repudiate the tool rental agreements.  Over the course of four months, the plaintiff repeatedly rented tools from Home Depot, all of which apparently resulted in successful transactions without incident.  Each of the nine rental agreements was executed, and the terms were performed by each party.  Indeed, the plaintiff holds up each agreement not as evidence of a breach of some material term, but rather as evidence supporting his claims of fraud.  Moreover, he makes no claim of rescission here.   Rather, he seeks the impossible: to maintain the benefit of his bargain while collecting damages under a tort theory for being fraudulently induced into the contract.   However, Georgia law is clear on this subject.   If a

party does not rescind a contract, he is bound by the terms of that contract in any dispute that arises thereof, and he cannot maintain an action sounding in tort.  Lakeside Invs. Group, Inc. v. Allen, 253 Ga. App. 448, 451 (2002).  Consequently, because the plaintiff has failed to rescind the agreements upon which he bases his claims, this court concludes that this action in tort cannot stand.

The only other viable alternative is to construe the plaintiff's fraud claim as a claim for "damages arising from the fraud and breach of contract."  Ainsworth v. Perreault, 254 Ga. App. 470, 472 (2002).[4]  As stated earlier, where there is a claim

---

[4]It must be acknowledged that the precise claim required to pursue an action in fraud based on a contract is somewhat ambiguous.  In particular, it is unclear whether a claim for fraud is solely a tort claim or whether it is more generally a claim for damages pursued through either a tort or breach of contract theory, and the recovery of which depends on whether the claimant has rescinded or affirmed the underlying contract.  The Georgia Court of Appeals has been imprecise in setting out the rule in this regard.  Compare Garcia v. Charles Evans BMW, Inc., 222 Ga. App. 121, 122 (1996)("The lessee may affirm the contract and sue for breach of contract or rescind the contract and sue in tort for fraud."); and Jones v. Cartee, 227 Ga. App. 401, 403 (1997)(stating that a defrauded party having elected to affirm a contract is limited to a recovery in contract whereas a rescission of the contract allows for recovery under a tort theory); with Ainsworth v. Perreault, 254 Ga. App. 470, 471 (2002)("[A] party alleging fraudulent inducement to enter into a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud."); and G. Mansour, Inc. v. Mansour's, Inc., 233 Ga. App. 7, 9 (1998)(noting that in cases of fraudulent inducement a party has two options: "(1) to promptly rescind the contract after

16

of fraud and the claimant has affirmed the contract, the terms of the agreement provide the only grounds for relief.  Lakeside Invs. Group, Inc., 253 Ga. App. at 451.  Because this court has concluded that the plaintiff has affirmed the agreements at issue here, it must determine whether his claims are plausible in light of the fact that he is bound by the terms of those agreements.  In addition to the express terms of the contracts, it is undisputed that the lease agreements contained merger clauses.  Thus, the plaintiff is bound by provisions of those clauses as well. [5]  Id. ("[T]he presence of a merger clause is determinative if the defrauded party has not rescinded but has elected to affirm the contract.")(citing G. Mansour, Inc., 233 Ga. App. at 9.)

---

discovering the fraud and sue in tort for the recovery of the contract's consideration, as well as any other damages resulting from the fraud; or (2) affirm the contract and sue for damages resulting from the fraud.").  In any event, the court will err on the side of caution and broadly construe the plaintiff's fraud claims in this matter as alleging damages based on a contract theory as well as a tort theory.

[5]The plaintiff argues that a merger clause can have no bearing in a case, such as this, where fraud is at issue.  However, that is a true statement only in circumstances where the underlying contract has been rescinded.  Where the contract has been affirmed, as this court has found here, then the merger clause is not defeated by claims of fraud.  See del Mazo v. Sanchez, 186 Ga. App. 120, 126-128 (1988).

The plaintiff's fraud claims rest on three alleged warranties that make the offer of a "damage protection" plan unnecessarily redundant and thus fraudulent: (1) manufacturer warranties, (2) Home Depot's warranty through a Quality Assurance Tag that was attached to each tool rented, and (3) Home Depot's warranty in paragraph six of the rental agreement promising to repair or replace any tool that became unsafe or in a state of disrepair. Each of these claims fails for multiple reasons.

First, this court addresses the alleged manufacturer warranties. In his complaint, the plaintiff has alleged no facts showing the applicability of any manufacturer warranty to the tools rented by Home Depot. In this regard, the complaint merely asserts that manufacturer warranties apply and that Home Depot defrauds customers through concealment of the operating manuals and thereby fails to disclose the otherwise applicable manufacturer warranties. However, the complaint provides no factual support for that assertion. Although the plaintiff has a very low burden with respect to sufficiently stating a claim to survive a motion to dismiss, he must nevertheless make a plausible claim that states the grounds for relief. Here, there are no grounds for relief stated, i.e., there is nothing showing the applicability of

18

manufacturer warranties to any tool rented by a Home Depot customer. There is only the assertion that such warranties *would* apply if it were known what the manufacturers actually warranted. Consequently, this court concludes that the plaintiff's fraud claim with respect to the alleged manufacturers' warranties is insufficient to "nudge[] their claim[] across the line from conceivable t plausible." Bell Atlantic Corp., 127 S.Ct. at 1974.

Moreover, the express terms of the written tool agreement clearly exclude any warranties that may be otherwise applicable or may have otherwise been made by Home Depot with respect to the equipment being rented, and it specifically states that the customer is renting the equipment "as is." [Def.'s Mot. to Dismiss, Ex. F., ¶ 1, Doc. 3-8.] Thus, even if a manufacturer's warranty did apply to tools rented by Home Depot, no such warranty extended to the customer by virtue of the written terms of the tool rental agreement between Home Depot and that customer. Lakeside Invs. Group, 253 Ga. App. at 451.

Second, this court addresses the warranty Home Depot allegedly made through the Quality Assurance Tag attached to each tool offered for rent. According to the plaintiff, because Home Depot attached to each tool an assurance tag that stated, "This equipment

19

has been inspected for safe and proper operation." [Compl. ¶ 13, Doc. 1-2], Home Depot warranted that the rental equipment would properly operate as intended. This contemporaneous statement, however, could not serve as evidence of any fraud arising from the contract because it was not part of the written agreement. The merger clause in the agreement expressly disclaims any promise, representation, or warranty that is not provided for in the written contract. Consequently, even if the Quality Assurance Tag constituted a promise by Home Depot, it was a promise made outside of the written agreement and, therefore, cannot support a claim for fraud once that agreement has been affirmed. <u>Harkins</u>, 274 Ga. App. at 481.

Third, the plaintiff asserts that Home Depot concealed the fact that paragraph six of the rental agreement, which warrants that Home Depot will repair or replace equipment that becomes unsafe or in a state of repair during "normal use", offers the same protection as the additional "damage protection" plan and thus defrauds customers by charging an extra ten percent while incurring no additional obligation. Additionally, the plaintiff alleges that upon inquiry into the applicability of the "damage protection" plan, Home Depot employees inform customers that without the

"damage protection" plan, a customer is *fully* liable for *any* damage that occurs to the tools.  This is a misrepresentation, according to the plaintiff, because other express terms of the agreement, such as paragraph six, place liability for at least some damage, i.e, damage that occurs during "normal use," on Home Depot.  The plaintiff contends that this misrepresentation about the effect of the "damage protection" plan and the concealment of paragraph six amount to fraud.

The plaintiff's arguments in this regard, however, suffer the same fatal flaw as his other grounds for fraud.  Even if everything that the plaintiff has alleged is true, the concealment of the applicability of paragraph six cannot support a claim for fraud because the merger clause included in every agreement contains an express acknowledgment on the part of the customer that "I agree to the terms and conditions printed on this page and on the other page(s) of this agreement."  [Mot. to Dismiss, Ex. A., p. 2, Doc. 3-3.] Such a merger clause, and the undisputed fact that the plaintiff was not prevented from reading the contract before he signed it, precludes any claim for damages based on fraud.  <u>See</u> <u>Garcia</u>, 222 Ga. App. at 122.

Additionally, the alleged misrepresentations by Home Depot employees with respect to a customer's potential liability if the "damage protection" plan were not chosen also cannot serve as a basis for fraud.  The accurate information regarding the liability of a customer with or without the "damage protection" was contained within the written agreement.  A person entering into a contract must exercise due diligence to verify representations made regarding the provisions contained within that contract.  Empire Distributors, Inc. v. Hub Motors Co., 240 Ga. App. 568, 569 (1999). Since the accurate information was readily available, and there is nothing before the court showing that the plaintiff could not discover such facts through ordinary prudence and caution, a claim for fraud based on an alleged misrepresentation that could have been verified by reading the actual terms of the contract the plaintiff subsequently entered into cannot survive.

Therefore, even construing Count I as a claim for damages arising from the fraud or breach of the agreement, this court concludes that the plaintiff has not stated a claim to relief that is plausible on its face.  See Bell Atlantic Corp., 127 S.Ct. At 1974.

The second count of the complaint alleges negligent misrepresentation.  The only difference between fraud and negligent misrepresentation is "whether the defendant knowingly or negligently made the misrepresentations." American Casual Dining, 426 F. Supp. 2d at 1365.  Because the analysis for determining damages resulting from the fraud is the same for negligent misrepresentation as it is for fraud once a court has concluded that the underlying contract has been affirmed, the negligent misrepresentation claim, Count II, fails for the same reasons as Count I.

With respect to Count III and IV, the plaintiff's response did not address Home Depot's arguments in support of its motion to dismiss those claims.  Accordingly, pursuant to Local Rule 7.1(B), dismissal is warranted for the plaintiff's money had and received claim and his unjust enrichment claim.

The plaintiff's final claim for punitive damages, Count V, is not an independent cause of action.  Byrne v. Nezhat, 261 F.3d 1075, 1093 n.3 (11th Cir. 2001).  Therefore, that claim is dismissed as well.

**CONCLUSION**

For the foregoing reasons, the plaintiff's Motion to Remand [Doc. No. 4] is DENIED; Home Depot's Motion to Dismiss [Doc. No. 3] is GRANTED; and Home Depot's Motion to Dismiss the Amended Complaint [Doc. No. 13] is DISMISSED as MOOT.


SO ORDERED, this _14th_ day of August, 2007.


_____
ROBERT L. VINING, JR.
Senior United States District Judge